Thank you, Your Honor. If it may please the Court, Andrew Plotman on behalf of Mr. Roland and Ms. Chan. And today I'd just like to thank you for the opportunity to appear in an oral argument regarding kind of a confusing issue implicating jurisdiction and Congress in its most recent major immigration overhaul enacted jurisdiction stripping statute. And the question that we have today is whether the assorted jurisdiction stripping statutes in the Immigration District Court from reviewing some questions of law and constitutional issues that Mr. Roland and Ms. Chan ultimately would like to have reviewed. Well, along that line, tell us why our decision in Lee from 2010, why doesn't that control the outcome of this case? Well, it may, and that's why we're here today. But my clients and I take the position that one of the jurisdiction stripping provisions under 1252A2D, that's the one that sort of to hear most of the legal issues that were raised, not the no risk, the discretionary issue. The no risk discretionary issue is a predicate determination to the discretionary adjustment of status, is it not? Well, in this case... You've got to have it in order to ultimately get the adjustment of status, which is the discretionary determination. There are two discretionary determinations. Adjustment of status has within it a discretionary determination, but prior to that, Congress has left to the discretion of the Secretary of Homeland Security whether or not, to determine whether or not the petitioner of the visa petition poses a risk to. And so before adjusting status... You need a visa petition. There's an earlier discretionary determination. Yeah, so what . . . Well, why isn't . . . Judge Agee asked you the question about Lee. It seems that there's one sentence in Lee on the last page that says that to the extent that Congress decided to permit judicial review of a constitutional or legal issue bearing upon the denial of adjustment of status, bearing upon, not solely limited to adjustment of status, but bearing upon, it intended for the issue to be raised to the Court of Appeals during removal proceedings. It seems to me that we were saying pretty clearly in Lee that for any discretionary decision, whether it's ancillary and previous to the actual adjustment because it bears upon the adjustment of status, you've got to wait till removal to raise it, and then you can raise it. It seems to me that that's what Lee's saying, and so could you tell us why it's not? Right. Well, that's where the confusion plays, and there's two jurisdiction stripping provisions. The one that deals with discretionary decisions is under A2B, and that divests the Court of Jurisdiction, like you said, any discretionary decision. In 1252 A2D, Lee says that only this Court, upon a petition from review from a Board of Immigration Appeals decision. You're talking about removal there, aren't you? Yeah, removal. And the reason why Lee maybe needs some tweaking or ... First of all, Congress remained silent about making this court the exclusive venue in which questions of law, constitutional questions can be raised. Well, when you look at the statute, it says, notwithstanding any other provision of law, regardless of whether the judgment decision, et cetera, is made in removal proceedings, no court shall have jurisdiction to review any judgment granting relief under 1255, which is where you need to come out. And then it goes on to say in D, the same language that Judge Kenan has quoted, it limits any other legal or constitutional issues to be raised, because we know discretionary issues are off the table, to be raised upon a petition for review filed with an appropriate court. That would seem to exclude just about everybody except the Court of Appeals upon a petition for review. Well, so the question is, did Congress intend to make this court the exclusive venue, or is it clarifying that this court retains jurisdiction to consider questions of law on a petition for review? And it goes back to looking at the legislative intent when Congress did that. It was to ... Well, what about the no court shall have jurisdiction to review? That would seem to be pretty straightforward and to the point. No court shall have ... Here, let me, if you don't mind, Your Honor, let me pull out B. No court shall ... L52A2B. Yeah, A2D. B. Oh, B. Well, B is ... And then B puts in an exception to B. To appear ... It would appear to limit the exception to petitions for review filed in the Court of Appeals. To take that position would mean that Congress intended to preclude somebody like Roland, who is a United States citizen or otherwise a petitioner in a business case, a U.S.-based corporation, from ever raising a question of law or a constitutional issue before the case. He can't be put into removal proceedings unless he'd give up his citizenship and come back as an immigrant, I suppose. And then it's a discretionary decision as to whether or not to place ... It's a matter of prosecutorial discretion whether or not to place somebody like Chan into removal proceedings. And the immigration court doesn't have jurisdiction to review the I-130 that Roland filed on behalf of Ms. Chan. So she would just be in the immigration court with no relief, and so this court would never get to review something like an issue that comes up in a visa petition, issues that come up in visa revocation. And so 1252a2d, if what this court said in Lee were to stand, would block somebody like Roland and potentially like Ms. Chan from ever having this branch of government, the constitutional or ... Constitutional issues or questions of law. Well, why isn't your position, though, Mr. Klotman, just turning every discretionary decision into ... Anything could be framed as a legal challenge. Well, okay, so ... And what you're doing is really undermining the clear purpose of the statute to limit review in adjustment of status matters left to the discretion of the Secretary of Homeland Security or the Attorney General. Well, the ultimate decision as to whether or not Mr. Roland poses a risk to Ms. Chan is a discretionary decision. However, the Homeland Security makes legal decisions prior to weighing the evidence and deciding whether or not he's a risk. And typically in immigration proceedings, evidence gets weighed and the petitioner needs to satisfy a burden by preponderance of the evidence. And usually the discretionary decision involves looking at ... For instance, adjustment of the statutory waiver. The government will issue guidance that says, these are the factors of presence in the ... Right, but every case ... I don't mean to cut you off, but every case would have legal issues then. And there would be no finality contrary to the clear intent of the statute, it seems to me. And that's what I need you to address. Well, the legal issue here is that not challenging the ultimate discretionary decision, challenging whether or not the Adam Walsh Act ... Whether or not the government's position is ultra-virus to the Adam Walsh Act by instituting and legislating through guidance without doing rule-making, without formal adjudication, that a evidentiary standard ... This is also ... The question as to whether ... Her adjustment of status. Yeah. Well, it's with the I-130 petition. So my position is we need to untangle the discretionary, the ultimate discretionary decision from legal conclusions that are best left to Congress. Congress knows how to institute a higher burden. Congress knows the words, even though some of my private bar colleagues would say Congress has trouble passing immigration legislation, they know how to draft it. And they know the words clear and convincing, know the words ... Beyond a reasonable doubt doesn't appear in the Immigration Nationality Act. But when Congress wants to institute a higher evidentiary standard, Congress knows how to enforce the law. And in this case, the government has simply produced guidance that didn't go through formal rule-making, that although there was a formal adjudication decision from the Board of Immigration Appeals, sort of the board said that it didn't have jurisdiction, that the venue would actually be proper before the federal courts to look at the beyond a reasonable doubt issue. And so it goes back to trying to untangle what's ... Another way to look at it is that Congress has given Homeland Security discretion to make the decision. So at what point does the process with coming to the decision, where does the discretion without authority from Congress or rule-making without going through proper notice and comment or formal adjudication? And that's why we take the position that Congress ... That Homeland Security's position is ultra-various. Because Congress knows what it's doing when ... And because we're dealing with a legal issue there, this honorable court and the district court have jurisdiction to hear Roland and Chan's argument regarding whether or not the position is ultra-various to the statute. I'm not saying, okay, I don't like the way that you weighed the evidence. I'm not saying, all right, you had a feeling in your gut, you didn't want, for some reason in the interview or at some point during the adjudication process, something didn't sit right with you and you deny this as a matter of discretion. That's not what Roland and Chan are challenging. Rather, they're challenging the legislating through guidance and then also the other issues that don't implicate the agency's discretion, like retroactivity and the constitutional issue. And so, really, the problems with Lee boil down to that 1252A2D would leave somebody in the position of Roland without an opportunity to ever have, whether it implicates a discretionary decision or not, without an opportunity to have this branch of government review his case. And then, regarding the discretionary decision, we're really asking for guidance from the Where does the discretion start in the process? And it's difficult and somewhat confusing to unravel. And then from there, Roland and Chan would like to have their issues actually reviewed. But before we get there, we need to deal with Lee and determine whether or not it's like if, not to sound like Columbo, but when I explain this to my wife, I say that Congress gave the keys to the car to Homeland Security and said, go to the store and buy a loaf of the car and drove 500 miles and bought a few other things and came back. And so, really, is Homeland Security following the law here? Or is it, and it's up to the court to decide where the line is. My time is up, Your Honor. You've got some time left on rebuttal. Okay. Thank you. Thank you very much, Ms. Gettle. Good morning, Your Honors. May it please the court, Kate Gettle on behalf of Appalese. This case is about discretion and whether the court has jurisdiction to review a decision made by U.S. Citizenship and Immigration Services in their sole and unreviewable discretion. The discretionary language is found in two key statutes. The first is Adam Walsh Act. Now, this says that the Secretary of Homeland Security must make a no-risk determination for certain individuals who've been convicted of a sex offense and that that no-risk determination is in their sole and unreviewable discretion. Then there's 1252A2B2. It's what I refer to as the discretionary review bar. It says that no court has jurisdiction to review decisions or actions committed to agency discretion by statute within certain chapters of the INA, which is applicable here. Now, the Adam Walsh Act could not be more clear in this regard. The statute clearly gives the Secretary of Homeland Security discretion and such a high level of discretion that is not found elsewhere in the INA and really very few other places within the law. Taking these two statutes together, the district court rightly found that it lacked jurisdiction to review appellant's Adam Walsh Act claim. Now, this broad discretion doesn't just cover the final decision of whether Mr. Roland posed a risk to Ms. Chan by evaluating the specific circumstances of his case, but it also covers those policies and practices that USCIS adopts to come to that ultimate determination, including the adoption of the beyond any reasonable doubt standard. As the BIA in their 2014 decision analyzing the Adam Walsh Act said, the standard of proof is part and parcel with the ultimate exercise of discretion. And as the Eighth Circuit said in Bremer, which is the only published circuit court decision on this statute, it says the act allows a secretary to determine the quantum of proof necessary to prove no risk. And that adoption of a quantum of proof. I mean, are you of the view that Lee controls this case? Yes. Appellees are of the view that Lee controls this case when Lee said that the court lacks jurisdiction to review legal claims. Well, wouldn't that, I mean, in your view, wouldn't that end the case? I mean, why would we get into the discussion of any of these other items? Our position is that Lee does end the case, yes. And as Your Honor says, Lee does control both the constitutional and legal claims here. And specifically, this court said that Lee, that petitioners can't use legal and constitutional claims to bootstrap their way into district court. And that the legal issues cannot be divorced from the actual discretion that was used. To address 1252A2D for a minute, the court need not reach the question of whether 1252A2D independently bars jurisdiction because 1252A2B, the discretionary review bar, already does. Now, 1252A2D states that the judicial review bars do not apply to constitutional and legal claims filed in a petition for review before the court of appeals. Appellants want to stretch this language to mean that where an alien does not have the possibility of filing a petition for review or is not currently in removal proceedings, then that opens the door to review in the district court of legal and constitutional claims. But this defies the plain language of 1252A2D. It does not create jurisdiction in the district court. Rather, A2D is an exception to the discretionary review bar, allowing for review if and only if filed on a petition for review with the court of appeals. Now, defendants recognize that it is highly unlikely that Ms. Chan will be put into removal proceedings. She entered under the Visa Waiver Program. And under that program, it's sort of an easy way to come into the country without a visa, but it's also a pretty swift exit out of the country. There is no judicial review of a removal order for someone who's entered under the Visa Waiver Program. Now, appellants want you to believe that because of this confluence of the Adam Walsh Act and her entry under the Visa Waiver Program, there's nowhere for her to bring her claims. And that is exactly what Congress intended. The language of the Visa Waiver Program and the language of the Adam Walsh Act could not be more clear in this regard that there is to be no judicial review. And there's no case law supporting the idea that 1252A2D creates jurisdiction. Again, the Lee case from this circuit said that the express language of the statute requires Lee to raise any constitutional or legal questions in the court of appeals. And again, such claims can't be bootstrapped into the district court. Well, now, could Mr. Rowland's I-130 claims be raised by Ms. Lee in the event of a removal proceeding in which she is a defendant? But by Ms. Chan in the removal proceedings? Yes. In the event that she's removed and in the unlikely event that she'd actually be put into removal proceedings, because again, a condition of the... Right, but if she is... If she is... Could she raise Mr. Rowland's... She could. Yes, that's correct. So she would technically be challenging the denial of her Adjustment of Status application in the court of appeals, but the underlying condition to her being denied Adjustment of Status is the Adam Walsh Act and the application of the Adam Walsh Act. So she could theoretically challenge it if she were put into removal proceedings. So you're denying then that there are legal issues. It's just you're saying you can't extract them from the discretionary review process. They can only be considered at the final stop, removal. Yes. The legal claims brought here cannot be disentangled or extracted from the ultimate discretion used here. And so that would be for the court of appeals to determine whether this was truly just a discretionary determination or whether there are legal challenges. But because we aren't even close to being in the right track in terms of judicial review, it is a bit premature to be opining on whether there's a properly raised legal or constitutional challenge here. As the 8th Circuit recently stated in the Bremer case, they said, assuming for the sake of argument that we even have jurisdiction to evaluate these constitutional claims, they went on to say there weren't even colorable constitutional claims present. So to your question, Your Honor, in that case, it basically didn't even surpass the plausibility standard according to the 8th, the constitutional legal claims didn't even pass the plausibility standard. And most of the same claims are in both of these cases, the Bremer case and in this case. Right. But you're not asking us to take that approach. It's almost an assuming without deciding jurisdiction, isn't it? It is. And that's exactly what the 8th Circuit did. And obviously, appellees would prefer that the case just be dismissed for lack of jurisdiction without an evaluation for the sake of argument at all. Well, if there's no jurisdiction, that's the end of it. That's correct. And I would say that what the 8th Circuit did in Bremer was a wrinkle that is sort of idiosyncratic to the 8th Circuit. And we would not encourage the Court to adopt the same approach here. But I note it just for, to answer your question, that even- Can we quote you that the 8th Circuit's idiosyncratic? You don't have to. Every circuit has their own approach. And Your Honors, if there's no further questions, appellees would request that the Court affirm the District Court's dismissal order and dismiss this case for lack of subject matter jurisdiction and all claims therein. Thank you very much. Thank you. Mr. Klotman, you've got some time left in rebuttal. Thank you, Your Honor. I would respectfully refer the Court in response to the government's position to some of the the third circuit in the Pinot case, Sukar in the 1st Circuit, Mamegonian in the 9th Circuit. And then even within our circuit, last summer, the District Court in the Eastern District of . . . was it last summer? Last winter, the Eastern District of Virginia District Court found that this Court had jurisdiction over questions of law regarding the Adam Walshack claims so long as the issue didn't fall within the purview of the discretionary jurisdiction bar. And so that Court was able to take a look at Lee and determine that it still had jurisdiction. And I don't know where that case is procedurally, if that's on its way here too. So I appreciate this Court's guidance in straightening out because right now there's a split between the Eastern District of Virginia and Judge Kupferberg's case in our matter in Western District of North Carolina. And really at the end of the day, it goes to whether, as far as the discretionary decision goes, whether we can untangle legal questions from the ultimate discretionary decision. And as for the other, incidentally, and I'd be glad to brief the Court further on this, but Ms. Chan wouldn't have anything she could raise, but the Immigration Court doesn't have jurisdiction to review denial of an I-130. Denial of an I-130 could be . . . there's an appeal available for that, an administrative appeal, but not in removal proceedings in that case. The only way would be if she was self-petitioning in a battered spouse type of case under violence against women act. So I thank the Court for its time, if there are any further questions. Thank you very much, Mr. Klopman.
judges: G. Steven Agee, Barbara Milano Keenan, Stephanie D. Thacker